**NATIONAL LABOR RELATIONS BOARD v. RED RIVER LUMBER CO.**

No. 9093.

Circuit Court of Appeals, Ninth Circuit.
Jan. 16, 1940.

Rehearing Denied March 9, 1940.

See 110 F.2d 810.

158

Charles Fahy, General Counsel, Robert B. Watts, Associate General Counsel, Malcolm F. Halliday, Asst. General Counsel, Richard· A. Perkins, Atty., and Sylvester Garrett, Atty., all of Washington, D. C., all of the National Labor Relations Board, for petitioner.

J. Paul St.· Sure, of Oakland, Cal., Bartley C. Crum, of San Francisco, Cal., and Edward H. Moore, of Oakland, Cal., for respondent.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

The petitioner, on September 14, 1939, obtained from this court a rule requiring the Red River Lumber Company, respondent, to show cause why it should not be punished for contempt in violating an order of this court entered February 6, 1939, enforcing an order of petitioner concerning the labor relations of the respondent. 9 Cir., 101 F.2d 1014. It is conceded that the order, in the main, has been complied with. Certain sections of the order relating to the maintenance of law and order in the community of Westwood, California, required by our enforcement order of February 6, 1939, are alleged to have been violated by the respondent. These provisions are contained in paragraph 1, sub. C, paragraph 2, subs. A, B and C. .

The petition herein alleges a number of acts occurring prior to the issuance of the enforcement order by this court, towit, on July 5, 1935, May 1, 1937, July 13, 1938, July 11, 1938, April 3 and July 27, 1938, July 21, 1938, September 26, 1938, and December 13, 1938.

As a basis for the charge of contempt of court by the respondent, it is alleged that from the date of the order to the date of the petition the respondent, by its officers, agents and supervisory employees, have incited, assisted and encouraged the organization of vigilante or other groups among the general public in the community of Westwood, California, for the purpose of interfering with, restraining and coercing its employees in the exercise of their rights guaranteed them by Sec. 7 of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 157, and have failed to make reasonable efforts to discourage and deter breaches of the peace committed against the respondent's employees on account of their affiliation with or activity in the I. W. A.;[1] has failed and neglected to require its officers to refrain from influencing or attempting to influence its employees to join, or not to join, labor organizations. In order to disclose the power and authority of the respondent to prevent or control the organization of vigilante groups and to discourage and deter breaches of the peace, petitioner makes a detailed statement of occurrences at Westwood involving preservation of law and order.

It is alleged by petitioner that S. W. Macdonald is the manager of the industrial relations of respondent, having general supervision over the hire and discharge of the employees; that he is also a deputy sheriff of Lassen County, and a deputy constable of Westwood township; that E. A. Welder, the head of the auditing department of respondent, is also a deputy sheriff of Lassen County; that K. R. Walker, secretary of respondent, is also a deputy constable of Westwood Township; that A. V. Bangle, employed by the company at a salary of $165 monthly as a safety steam water inspector, is also the constable of Westwood Township, receiving a salary of $100 per month therefor. It is alleged that Bangle was employed by the company as a safety steam and water inspector to influence and control his action as constable. It is alleged that at all times after February 6, 1939, all the constables of Westwood Township and all the deputy sheriffs of Lassen County, residing in the settlement of Westwood, have been em-

[1] Lumber and Sawmill Workers' Union, Local No. 53, International Woodworkers of America, affiliated with the Committee of Industrial Organization, called the "I. W. A." throughout the petition herein.

ployees and agents of the respondent; that the only peace officer other than these employees charged with the duty of maintaining law and order in Westwood was the justice of the peace. It is alleged that none of the public officers above mentioned are members of the I. W. A., and that these officers participated in violence directly against the members of the I. W. A. on July 13, 1938 (before the issuance of the enforcement order). It is alleged that the respondent has a rule by virtue of which it discharges employees who commit assaults and batteries and other acts of violence or misconduct, whether or not the same occur at or near the sawmill or logging operations of respondent.

It is alleged on information and belief that certain employees of respondent, on January 6, 1939 (before the date of the enforcement order), had uttered threats against the members of the I. W. A. and that the company had knowledge of these threats; that from February 6, 1939 to May 1, 1939, the respondent permitted members of the "Brotherhood",[2] including officials and supervisory employees of respondent, to gather in public places in Westwood and utter threats and offer violence to members of the I. W. A.; that the respondent knew that to permit such unlawful assemblies to gather and remain in public places would incite, assist and encourage the organization of vigilante and other groups for the purpose of destroying the I. W. A.; that members of these unlawful assemblies were unarmed and could have been dispersed had the respondent, by its officers and agents, ordered them to disperse and procured the arrest of any of their number or threatened to procure their discharge from the employ of respondent, pursuant to rule, but that respondent, by its agents and officers, failed and neglected to do so. This failure is charged as a violation of our order. It is alleged that on February 18, 1939, the respondent, by its officers and agents, procured, encouraged and assisted a large gathering of disorderly persons consisting for the most part of employees of the respondent and members of the "Brotherhood" to gather around a certain meeting place in the settlement of Westwood wherein members of the I. W. A. were conducting meetings.

It is alleged that S. W. Macdonald, the deputy sheriff who was manager of the industrial relations department of the respondent, witnessed an assault upon a member of the I. W. A. by Fred Lake and failed to take any action to procure the arrest of Lake; that when constable Bangle requested a large crowd of disorderly persons to disperse, Macdonald, in a loud voice, encouraged members of the gathering to remain where they were, which they did.

On March 1, 1939, in the presence of Macdonald, two members of the I. W. A., Louis Nysen and Ben Nysen, were chased through the streets of Westwood; that in the crowd pursuing these members of the I. W. A. were several members of the "Brotherhood"; that Macdonald held the fleeing I. W. A. members until the "Brotherhood" members were near at hand when he released them and ordered them to get off the streets of Westwood; that when the Nysens attempted to escape Macdonald pursued them and made no effort to restrain the crowd. Similarly, it is alleged, that on March 2, 1939, a mob of disorderly persons threatened 40 members of the I. W. A. organization which were in their office building; that Macdonald, although requested to interfere, did not do so.

It is alleged that at all times during the above offense, respondent, by its officers and agents, "could have prevented the unlawful conduct of the said mob by making reasonable efforts or exercising due diligence to prevent such unlawful activity."

▮ The petition is fortified by 27 affidavits. The respondent challenges the sufficiency of the petition to state a charge of contempt by moving to dismiss the petition. It is pointed out that all instances in which it is sought to charge respondent with failure to comply with our order are instances in which it is claimed that officers of the company, who are also civil officers of the state, neglected to disperse mobs, make arrests, or perform other duties devolving upon them as peace officers of the state. This neglect of duty is charged to the respondent upon the theory that they are active and responsible officers of the corporation. It is obvious that the respondent cannot be charged with responsibility for malfeasance or nonfeasance of peace of-

[2] Local 2836, United Brotherhood of Carpenters and Joiners of America, affiliated with the American Federation of Labor. referred to in the petition herein as the "Brotherhood."

ficers, unless it is shown that the wrongful action is the result of its direct interference with or instructions to the officer. The petition was verified by the members of the National Labor Relations Board in the District of Columbia on September 12, 1939, and is based solely upon information and belief.

■ The respondent contends that because all the allegations in the petition are upon information and belief this court has no jurisdiction to punish for the alleged contempt. The authorities cited by respondent do not sustain this view, nor is it tenable.

It is clear that the general allegations of the petition are predicated upon the assumption that the various persons named as peace officers of the state and also as officers of the respondent were acting in that dual capacity when they committed, or refrained from committing, the acts in question. At the time of the argument we suggested that under these circumstances it might be well for the respondent to file an answer and counter affidavits without waiving its motion to dismiss, and this the respondent has done. It filed an answer admitting many of the allegations of the petition but specifically denying that the company was in anywise connected with the disturbances in question and alleging that in all these matters it remained neutral. In addition, it filed 92 affidavits, including affidavits from S. W. Macdonald, T. S. Walker and A. V. Bangle, wherein these employees or officers of the company who were also peace officers alleged that during the times mentioned in the petition in which they acted or refrained from acting in connection with the disturbances of peace mentioned in the complaint, they were acting solely and entirely in their capacities as peace officers and not as officers of the respondent; that in such action they were cooperating with the governor of the state of California, with the highway patrol officers of the state who had been assigned to that area, and with the state officers having charge of industrial relations, and that the officers and employees of the Labor Relations Board were duly notified of the occurrences in question as they occurred.

We thus have before us the allegations of the petition and of the answer and 119 affidavits dealing with the disturbances of public peace which have occurred in Westwood, California, from the date of the enforcement order to the date of the rule to show cause.

In this situation we will first consider the sufficiency of the petition to invoke action by punishment for a civil contempt. We do not construe the order of the court to require the respondent to keep the peace or preserve the peace of the community of Westwood. This duty rests entirely upon public authorities. The order did not contemplate punishing the respondent for mere inaction in difficulties between its employees but, on the contrary, prohibited the company from taking part in breaches of the peace committed by one group of its employees against other employees or groups thereof. It is only in this latter aspect that we can consider the charge of violating the order.

■ There is no allegation of misconduct by the company in the petition which is supported by the affidavits filed therewith other than the allegation that certain peace officers who were also employees of the company, had done or refrained from doing certain acts which as peace officers they should have refrained from doing or should have done. In the absence of showing that they were in fact directed by the respondent it must be presumed that they were performing their duties as peace officers and not as employees of the respondent where the situation demanded official action by such peace officers. See Red River Lumber Co. v. Cardenas, 9 Cir., 95 F.2d 157.

If we turn to the affidavits filed on behalf of the respondent we find that any inferences which might be drawn from the general language of the petition to the effect that the peace officers were acting as officers of the company during the disturbances, are met by specific statements of the actual occurrences and by denial of the officers and employees of respondent who are referred to in the petition that they were acting on these occasions in any capacity other than that of peace officers.

It is contended by respondent that the real difficulty in Westwood results from the failure of the petitioner to call an election in conformity with an alleged agreement to do so within two months and not less than six months from the date of our order, which was entered in pursuance of a stipulation therefor. The real difficulty seems to be with reference to the attitude of the men themselves toward each other. If any agreement was made by the peti-

tioner to call an election in connection with this contest between the employees of the respondent it should have been made a matter of record in connection with the issuance of our enforcement order. We find it unnecessary to consider any question in relation to the holding of an election by the employees of the respondent. The allegations of the complaint, the nature of the charges of contempt, and the character of the order which might properly be made by us, all indicate that it is unnecessary to proceed further with the charges of the petition so far as they relate to the alleged disturbances of the peace. Nothing is to be gained by making a technical ruling with regard to the sufficiency of the allegations of the petition to charge a violation of our order where it is clear in the light of the affidavits before us that it would be useless to proceed further with the charge of contempt growing out of the alleged breaches of the peace. Our order of February 6, 1939 is still in force and if not obeyed the respondent can be brought before the court for such order as may be appropriate.

### Yorton matter.

Aside from the allegations of the petition with regard to breaches of the peace, the petition charges that respondent failed, refused and neglected to offer to Earl Yorton immediate and full reinstatement to his former position and to make him whole for loss of pay, as required by the order of February 6, 1939. It appears from the affidavit of Earl Yorton contained in the appendix to the petition that, about December 21, 1938, he was offered a job by the respondent, that he refused to accept the job offered and asked for his back pay; that he signed a letter stating that he did not want to work for the respondent; that he was paid his back pay at the rate of 63½ cents per hour for the time he would have worked from July 14, 1938 to December 21, 1938; that he signed the letter stating he did not want to work for the company because he was informed that if he did not do so he would probably have to wait 90 days at least for a settlement and stating, "as I was unable at the time and as there was serious illness in my family I signed the letter". It should be observed that the date of settlement (December 21, 1938) was prior to the enforcement order issued by this court (February 6, 1939), but was after the order had been made by the Board. Neither the order of the Board nor the order of the court fixed the amount

that was to be paid to Yorton, nor did the orders specify the job to be offered or rate of pay he had received, other than by reference to his job and pay on the date he was separated from the employment of the company, which was July 13, 1938.

The reply affidavits filed herein on behalf of the respondent are very elaborate and detailed and show that the petitioner was fully advised by reports from the respondent as to the amount paid by respondent to Yorton and that a willingness was expressed by respondent to reconsider the question of compensation to be paid Yorton if in the opinion of the Board it was desirable. Without taking into consideration the reply affidavits of the respondent, which fully explain the situation, it is sufficient to say that the petition of the Board, supported by the affidavit of Yorton, fails to show noncompliance with the order of court of February 6, 1939, which was made after the settlement between the respondent company and Earl Yorton had been effected. The order should not be construed as directing payment of a claim already settled, unless specific directions were made therein for the reopening of the settlement. So construed there was no disobedience of the court's order in failing to pay an additional amount claimed by Yorton.

With reference to the foregoing matters, the petition does not show that the respondent has been guilty of contempt.

### Discharge of Payne and Kougianos.

The petition, however, alleges that two employees of the company have been discharged in violation of paragraph 1-A of the enforcement order issued by this court. Albert Payne was discharged April 27, 1939, and Kougianos was discharged August 11, 1939. It is alleged that both of these discharge orders were made because of the union affiliations of the employees. This is denied by the respondent's answer, and the supporting affidavits filed by respondent are to the effect that these discharges were made in each instance because of failure to conform to the orders and rules of the company with relation to the work they were doing. It is specifically denied, both by the affiants and by the answer, that the union relationship of the discharged employees had anything whatever to do with their discharge. In submitting counter affidavits the petitioner makes the following statement: "Petitioner

does not, by filing these affidavits, submit the same for consideration upon the respondent's pending motions to dismiss or to strike; neither does petitioner consent or agree that respondent's answer or affidavits may be considered with respect to the respondent's pending motions to dismiss or to strike. By such filing the petitioner does not submit any issue of fact to be tried upon affidavits; petitioner desires to be notified and heard when the mode of trial of the issues is to be determined."

In view of the request of counsel that further opportunity be given to present evidence on disputed questions of fact, we would say, first, that we see no occasion for the appointment of a special master or for the personal appearance of witnesses. The numerous affidavits already filed fully disclose the diverse views of the parties hereto and the case might well stand submitted upon these factual issues upon such affidavits were it not for the request of the petitioner for an opportunity to present further evidence. In view of this request petitioner will be given ten days in which to file additional affidavits with relation to the discharge of Payne and Kougianos, and the respondent will be given ten days thereafter to file additional counter affidavits. Thereupon the matter will stand submitted for decision on the merits upon the affidavits on file.