**COMMODITY FUTURES TRADING COMMISSION, Plaintiff-Appellee,**

v.

**PREMEX, INC., and Samuel Zack, Defendants-Appellants.**

No. 80–2636.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1981.

Decided July 28, 1981.

Mark S. Lieberman, Rosenthal & Schanfield, Chicago, Ill., for defendants-appellants.

Gregory C. Glynn, Commodity Futures Trading Commission, Washington, D. C., for plaintiff-appellee.

Before PELL, Circuit Judge, MARKEY, Chief Judge,* and WOOD, Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants Premex, Inc. ("Premex") and Samuel Zack ("Zack") appeal the district court's holding that defendants individually violated the terms of a previously entered Consent Judgment of Permanent Injunction. The violation resulted in a civil contempt citation of the consent decree. In consequence, defendants were ordered to pay the expenses and fees incurred by plaintiff, the Commodity Futures Trading Commission ("CFTC"), in bringing defendants' past violations of the decree to the court's attention. At issue is whether Premex and Zack were properly held in civil contempt for violation of the consent decree. The propriety of the court's award of costs and fees to the CFTC is also contested. We affirm.

### I. Background

Premex, a Michigan corporation, solicits from public customers for investment in precious metals leverage contracts regulated by the CFTC. On January 20, 1978, the date of the entry of the consent decree, Zack owned fifty percent of Premex and also served as its president. Until late 1979, Premex maintained a branch office in San Diego, in addition to its principal office in Michigan. After January 1, 1980, Premex shifted its principal office to San Diego.

On January 12, 1978, the CFTC instituted a civil action against Premex and Zack alleging, in part, that defendants: (1) had committed and were committing violations of the CFTC's minimum financial requirements applicable to Premex as a futures commission merchant; (2) were committing fraud in connection with offers and sales of metals leverage contracts; and (3) had distributed promotional literature to purchasers and prospective buyers of its leverage contracts which stated that Premex was segregating its customer funds, when in fact, Premex had failed to do so.

On January 20, 1978, pursuant to the CFTC complaint, Premex and Zack voluntarily agreed to the entry of a Consent Judgment of Permanent Injunction by the district court enjoining them, *inter alia*, from:

A. Directly or indirectly, by use of the mails or any means or instrumentalities of interstate commerce . . . :

(1) employing any device, scheme, or artifice to defraud;

(2) making untrue statements of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. . . .

On or about February 8, 1980, Douglas Campbell, the Chief Regional Investigator for the CFTC's Western Region, received, through the United States mails, promotional literature from Premex stating: "Premex is registered as a Commodity Trading Advisor by the Commodity Futures Trading Commission. . . ." In fact, Premex's CFTC registration as an Advisor had expired on June 30, 1979 and, as the record indicates, has not yet been renewed.

A further misrepresentation within the literature assured prospective customers that if Premex encountered financial difficulties, the CFTC and the regulatory bodies of the various commodity exchanges would discontinue Premex's operations and would transfer all customer open positions and account balances to another company in advance of any threat to customer funds. The movement would be facilitated "be-

---

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

cause of the constant surveillance kept on every registered brokerage firm by the regulatory agencies." Campbell's affidavit indicated that Premex was at least three weeks behind in processing customer payment orders. Further, Premex was approximately six weeks behind in posting of customer records, rendering "surveillance" difficult if not impossible. Moreover, Premex is not and has never been a member of any commodity exchange designated by the CFTC and is therefore not subject to regulation by regulatory bodies of the commodity exchanges, as represented within the literature.

Based upon these facts, the CFTC on April 24, 1980, moved the district court for an Order to Show Cause why Premex and Zack should not be held in civil contempt of the earlier consent decree. On October 14, 1980, upon review of the affidavits, briefs, and other materials, the court found "clear and convincing" evidence that defendants' statements within the literature had violated portions of the decree and therefore held defendants in civil contempt. They were thus required to pay $3,108.92 in attorneys' fees and $979.71 for other expenses incurred by the CFTC in enforcing compliance with the court's order.

## II.

We turn first to the propriety of the civil contempt citation entered by the district court.

A. Defendants claim first that their unintentional failure to comply with the consent decree cannot form a basis for entry of judgment for civil contempt.[1] They urge that the decree merely restates a statutory standard requiring intentional conduct—scienter. They submit that scienter is a required element for violation of Paragraph A(2) since both the statutory and regulatory authority which comprise the basis of the issuance of the consent decree proscribes only intentional misconduct. We cannot agree. Reference to the language within the decree itself and to the broad statutory mandate and regulatory scheme which underlie the decree's language indicates that defendants' argument must fail. The scope of the consent decree must be discerned from within its four corners and not by reference to the specific purposes of any of its signatory parties.[2] *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757–1758, 29 L.Ed.2d 256 (1971); *Sportmart, Inc. v. Wolverine World Wide, Inc.*, 601 F.2d 313, 316–17 (7th Cir. 1979). Nowhere within the "four corners" of the consent decree is there a proscription against only intentional conduct. The words "willfully," "intentionally," "purposefully," or "scienter" are absent. Moreover, the proscriptions of Paragraph A(2) of the decree which are derived directly from the language of CFTC antifraud Rule 30.03(b), 17 C.F.R. § 30.03(b) (1978), contrary to defendants' assertions,[3]

1. The principal author of the literature in issue was the branch manager of sales in the San Diego office, who was discharged for cause by Premex in March, 1980 and is no longer employed by the company. The materials were prepared and distributed by the San Diego office allegedly without the knowledge or acquiescence of Premex. *See* Section IIB of this opinion, *infra.*

2. Premex and Zack seem to imply that the district court erred in denying them an evidentiary hearing in the contempt proceeding. However, the refusal to grant a full evidentiary hearing did not constitute a due process denial where the documentary evidence presented by the CFTC was more than sufficient to establish the contemptuous conduct. In addition, defendants received the CFTC's motion and supporting papers in ample time to prepare for a

show cause hearing. They also failed to demand such a hearing at that time and did not present any arguments which created any material issue of fact. Unlike the situation in *United States v. Alter*, 482 F.2d 1016, 1023–24 (9th Cir. 1973), Premex was not deprived of a meaningful opportunity to present its defense. Defendants merely failed to take advantage of the chance they were afforded in the court below. This failure in no way negates the legal proof of the contemptuous conduct tendered by the CFTC. *See United States v. Danenza*, 528 F.2d 390, 393 (2d Cir. 1975); *N.L.R.B. v. Red River Lumber Co.*, 109 F.2d 157 (9th Cir. 1940).

3. Defendants erroneously contend that the decree is largely derived from Section 4o of the Commodity Exchange Act, 7 U.S.C. § 6o (1976 and Supp. III 1979). Paragraph A(2) of the decree, they submit, differs from the prohibi-

do *not* evince a scienter requirement as a prerequisite to violation of the decree's provisions.[4] Nor can such a requirement be ascertained from a review of the CFTC's intent in promulgating Rule 30.03,[5] especially given the need to interpret the Rule broadly so as to effect CFTC's charge to promulgate requisite rules and regulations which are "necessary to effectuate any purpose of [the] Act." 7 U.S.C. § 12a (1976). *Compare British American Commodity Options Corp. v. Bagley*, 552 F.2d 482, 486–87 (2d Cir.), *cert. denied*, 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977).

Defendants also contend that *C.F.T.C. v. Savage*, 611 F.2d 270 (9th Cir. 1979), supports its claim that Rule 30.03 requires scienter. This contention is erroneous since that case construed Sections 4b and 4o of the Act, 7 U.S.C. §§ 6b, 6o (1976), and not Rule 30.03(b). Section 4b, unlike Rule 30.-03, incorporates language which may imply a scienter requirement—"*[w]illfully* to make a false report (4b(B)), *willfully* to deceive (4b(C)), and . . . *willfully* and *knowingly* to take the opposite side of a transaction for another person (4b(D))." *Id.*, 611 F.2d at 283 (emphasis in the original). Rule 30.03, on the other hand, contains no similar provisions. Its broader language is devoid of any hint that scienter is required before a violation would lie.

Defendants additionally rely upon *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), in asserting that scienter is required before liability may attach for civil violation of the consent decree. *Hochfelder* involved *private* actions for damages under Section 10(b) and Rule 10b–5 and therefore is inapplicable here. Accordingly, we must distinguish between private damage actions and public enforcement actions and apply a scienter requirement only in the former class of cases.[6]

tions of Section 4o and adopts the scienter standard within both Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976 and Supp. III 1979) and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1980). To the contrary, the proscriptions of Paragraph A(2) were taken directly from Rule 30.03(b). The initial complaint itself charges defendants with, *inter alia*, violations of Rule 30.03. No violations of Section 4o were charged and none are present.

4. The CFTC adopted Rule 30.03 pursuant to its authority under former Section 217 of the 1974 Commodity Futures Trading Commission Act of 1974, 7 U.S.C. § 15a (1976). This antifraud statute was repealed in 1978, Pub.L.No. 95–405, and ultimately replaced with similar provisions within Section 19(b) of the Commodity Exchange Act, Pub.L.No. 95–598, 7 U.S.C. § 23 (Supp. III 1979).

5. Rule 30.03 provides as follows:

30.03 *Fraud in connection with certain transactions in silver or gold bullion or bulk coins.*

It shall be unlawful for any person, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in, or in connection with (1) an offer to make, or the making of, any transaction for the purchase, sale or delivery of silver bullion, gold bullion, bulk silver coins or bulk gold coins pursuant to a standardized contract commonly known to the trade as a margin account, margin contract, leverage account or leverage contract or (2) the maintenance or carrying of any such contract.

We observe that in its notice announcing its proposed rule-making to redesignate and expand the coverage of Rule 30.03, the CFTC stated: "It should be emphasized . . . that the Commission also intends that scienter—*i. e.*, knowing or intentional misconduct—not be required to establish a violation of 30.03 . . . when adopted." 43 Fed.Reg. 52730 n.7 (Nov. 14, 1978). This announcement simply reiterated the CFTC's previously established position which was enumerated in 40 Fed.Reg. 26504, 26505 n.2 (June 24, 1975). There, the CFTC noted that it had not utilized the concept of willful behavior.

The CFTC has recently redesignated Rule 30.-03 as Rule 31.03, 17 C.F.R. § 31.03 (1980). *See* 43 Fed.Reg. 58554 (Dec. 15, 1978).

6. *See, e. g., Aaron v. Securities and Exchange Commission*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) (Blackmun, J., concurring).

Even those courts which advocated a scienter requirement in private damage actions found no equally compelling reason to place similar

Even if we read *Aaron* and *Hochfelder*[7] as requiring intent as a prerequisite to a violation of Paragraph A(1) of the consent decree, Premex and Zack violated Paragraph A(2) which, as mentioned, prohibits "making untrue statements of material fact or omitting to state a material fact. . . ." The court in *Aaron* held that the S.E.C. *need not* establish scienter as an element of an action to enjoin violations of Section 17(a)(2) and 17(a)(3) of the Securities Act of 1933, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3) (1976). The language of Section 17(a)(2), prohibiting any person from obtaining money or property "by means of a [misstatement] of a material fact or any omission to state a material fact" is nearly identical to the language of Paragraph A(2). Thus, *Aaron* supports our conclusion that scienter need not be established herein.[8]

■ B. Defendants next contend that they "had no reason to know" that their employee would author, and contrary to Premex policy and procedure, disseminate the violative literature. Premex, however, was required to ensure that the prior court mandates were enforced.[9] As soon as the literature was mailed, the decree was violated, no matter the circumstances underlying its distribution. Good intentions cannot sterilize conduct otherwise contemptuous. *Babee-Tenda Corp. v. Scharco Mfg. Co.*, 156 F.Supp. 582, 587 (S.D.N.Y.1957). *See Bigelow v. RKO Radio Pictures, Inc.*, 78 F.Supp. 250, 258 (N.D.Ill.), *aff'd*, 170 F.2d 783 (7th Cir. 1948). In short, Premex and Zack may not hide behind the cloak of an unfaithful employee defense.[10]

C. Premex and Zack next aver that the proceeding below was properly classifiable as one for *criminal* rather than civil contempt and therefore, intentional actions must be proven before any violation may lie. We cannot agree.

■ It is well settled that whether civil or criminal contempt has been committed depends upon the nature of the relief requested. *Shakman v. Democratic Organiza-*

---

strictures upon agencies charged with enforcement responsibilities. *See Securities and Exchange Commission v. Texas Gulf Sulfur Co.*, 401 F.2d 833, 866–68 (2d Cir. 1968) (en banc) (Friendly, J., concurring), *cert. denied sub nom., Coates v. Securities and Exchange Commission*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), *cited with approval in Ernst & Ernst v. Hochfelder, supra*, 425 U.S. at 197, 211–14, 96 S.Ct. at 1382, 1389–1391.

7. The Court in *Ernst & Ernst v. Hochfelder, supra*, 425 U.S. at 212, 96 S.Ct. at 1390, indicated that language similar to Rule 10b–5 "[c]ould be read as proscribing . . . any type of material misstatement or omission . . . whether the wrongdoing was intentional or not" (emphasis added).

8. *Cf. Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 200, 84 S.Ct. 275, 287, 11 L.Ed.2d 237 (1963) (attributing to a similarly worded provision in Section 206(2) of the Investment Advisors Act of 1940, 15 U.S.C. § 80b–6 (1976 and Supp. III 1979), a meaning that did not require a "[s]howing [of] deliberate dishonesty as a condition precedent to protecting investors. . . .")

9. Here, Zack claims that he never saw the literature in question until April, 1980. However, the record shows that on January 28, 1980, in the physical presence of Zack, Campbell, the CFTC investigator, was given a pack-

age of promotional literature which Premex had been distributing to prospective customers. Subsequently, Campbell was mailed materials including the same language contained in the literature he received in January. Zack's presence in the office indicates that not only *should* he have acted at that time, but also confirms his and Premex's ability to prevent violations of the terms within the consent decree through the exercise of reasonable diligence.

Our conclusion is supported by the rule that in most instances violations of a court order need not be willful to constitute civil contempt. *See Babee-Tenda Corp. v. Scharco Mfg. Co.*, 156 F.Supp. 582, 587 (S.D.N.Y.1957), *citing, Telling v. Bellows-Claude Neon Co.*, 77 F.2d 584, 586 (6th Cir.), *cert. denied*, 296 U.S. 594, 56 S.Ct. 108, 80 L.Ed. 420 (1935).

10. Under common law principles of *respondeat superior*, a principal is liable for the deceit of its agent, if committed in the very business the agent was appointed to carry out. This is true even though the agent's specific conduct was carried out without the knowledge of the principal. *Fey v. Walston & Co.*, 493 F.2d 1036, 1052 n.19 (7th Cir. 1974). *See also Paul F. Newton & Co. v. Texas Commerce Bank*, 630 F.2d 1111 (5th Cir. 1980) (and the cases cited therein); *Marbury Management, Inc. v. Kohn*, 629 F.2d 705 (2d Cir.), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980).

*tion of Cook County*, 533 F.2d 344, 348–49 (7th Cir.), *cert. denied*, 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976), *citing, United States v. United Mine Workers*, 330 U.S. 258, 298–99, 67 S.Ct. 677, 698–699, 91 L.Ed. 884 (1947). The purpose of a criminal contempt proceeding is punitive—vindicating the authority of the court. The purpose of a civil contempt proceeding, on the other hand, is remedial, with its purpose being either enforcement of a prior court order or compensation for losses or damages sustained as a result of noncompliance with the provisions of the order at issue. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949).[11] *See Shakman v. Democratic Organization of Cook County, supra,* 533 F.2d at 349.

■■ Defendants claim that reference to the CFTC's prayer for relief clearly indicates that the relief requested amounts to punishment for its past acts, with the CFTC's underlying purpose here being to put Premex out of business. This prayer, they argue, is punitive in nature, is not compensatory, and therefore is not classifiable as remedial. Our review of the relief in fact requested compels us to reject these contentions. The CFTC in its opening brief filed in support of its show cause motion, *suggested* two types of remedial or compensatory relief.[12] The agency suggested, in pertinent part, that Premex notify all customers who had received the tainted literature of the inaccuracies therein and afford them an opportunity to rescind their contracts with full refund. The CFTC also suggested that the show cause order include payment of all CFTC expenses and fees incurred in their effort to bring the alleged violation to the court's attention.[13] We find that this suggested relief was solely compensatory in nature and was only suggested in order to make whole those parties injured by the contemptuous conduct—customers of Premex who may have been damaged as well as the CFTC for its time and effort. The full relief *granted* awarded the CFTC its expenses and fees and determined as a matter of law that the defendants were in civil contempt. This relief can hardly be considered as punitive.

### III.

■■ Defendants also say that expenses and fees are not awardable under the circumstances of this action. Upon a finding of civil contempt, a court may, at its discretion, order reimbursement of the complainant, as part of the civil relief, of the party's fees and expenses incurred in bringing the violation to the court's attention. *United States v. Greyhound Corp.*, 370 F.Supp. 881, 886 (N.D.Ill.), *aff'd*, 508 F.2d 529 (7th Cir. 1974). *Accord, Shakman v. Democratic Organization of Cook County, supra,* 533 F.2d at 351; *American Saint Gobain Corp. v. Armstrong Glass Co.*, 434 F.2d 1216, 1218 (6th Cir. 1970). Moreover, an award of expenses and fees in civil contempt proceedings is proper and is independent of any award of compensatory damages. *Shakman v. Democratic Organization*

---

11. *See also, United States v. United Mine Workers, supra*, 330 U.S. at 303–04, 67 S.Ct. at 701; *Pabst Brewing Co. v. Brewery Workers Local Union No. 77, AFL–CIO*, 555 F.2d 146, 149–50 (7th Cir. 1977).

Further, Premex's allegedly nonintentional distribution of the literature does not absolve it from civil contempt, and the fact that a prohibited act is done inadvertently does not preclude a civil contempt citation, for the sanctions here are remedial in nature. *See Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129–30 (2d Cir. 1979); *United States v. Greyhound Corp.*, 508 F.2d 529, 533 (7th Cir. 1974); *Dunlap v. City of Chicago*, 435 F.Supp. 1295, 1300 (N.D. Ill.1977).

12. In its opening motion for a show cause order, the CFTC merely "suggested" a course of action for the district court to follow in ensuring complete compliance with the decree. Accordingly, the CFTC cannot be said to have requested relief which would be classified as criminal or punitive in nature.

13. Only in its reply to defendants' Memorandum in Opposition to the Motion for an Order to Show Cause, does the CFTC formally request actual relief. The request, noting that Premex and Zack were again in complete compliance with the prior order, only requested that defendants reimburse the CFTC for its expenses and fees incurred in filing the motions at bar.

of Cook County, supra, 533 F.2d at 351. It is also well settled that such awards may be made not only to private plaintiffs but to governmental agencies as well. *United States v. Greyhound Corp., supra,* 370 F.Supp. at 886. *See N.L.R.B. v. Local 825, International Union of Operating Engineers, AFL–CIO,* 430 F.2d 1225, 1229 (3d Cir. 1970), *cert. denied,* 401 U.S. 976, 91 S.Ct. 1200, 28 L.Ed.2d 326 (1971).

■ The attorney's fees and expenses awarded to the CFTC were based upon CFTC employee affidavits stating actual expenditures incurred in the prosecution of the instant contempt proceeding. The affidavits detailed the number of hours expended and the related hourly rate.[14] We find no error in the district court's award to the CFTC. This limited relief was compensatory rather than punitive and was well within the discretion of the district court.[15]

### IV.

For the foregoing reasons, the decision of the district court is AFFIRMED. All other arguments raised herein have been considered and are found to be without merit. Costs to the CFTC.

**14.** Attorney's fees were quite reasonably set at $3,109.92—averaging, as the record indicates, $14.57 per hour; total costs were also reasonable at $979.71.

**15.** Defendants here urge a different result. They err in contending that attorney's fees were incurred for the purpose of securing termination of distribution of literature whose distribution had already been terminated. In fact, the fees and expenses were incurred in prosecuting the contempt proceeding and were *not* made to coerce compliance. In this regard, the cases cited by Premex and Zack are inapposite. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), awarded attorney's fees based upon an action for injunctive relief involving deplorable conditions in the Arkansas prison system. The award "[v]indicated the District Court's authority over a recalcitrant litigant. Compensation was not the sole motive of the award...." *Id.,* 437 U.S. at 691, 98 S.Ct. at 2574. There, the award was granted as a penalty due to bad faith on the part of the defendant. The limited relief granted to the CFTC is not similarly classifiable.

Defendants' reliance upon *G & C Merriam Co. v. Webster Dictionary Co., Inc.,* 639 F.2d 29 (1st Cir. 1980), is also misplaced, since the issue there involved imposition of a civil fine rather than a compensatory award for attorney's fees.