ORDER ACCORDINGLY.

**In re GALLERIA ENTERPRISES OF MARYLAND, LTD., Debtor.**

**GUCCI AMERICA, INC., Guccio Gucci S.p.A., and Gucci Parfums International Ltd., Inc., Plaintiffs,**

v.

**MICHAEL FOX AUCTIONEERS, INC., Defendant.**

**Bankruptcy No. 86–B–1595.
Adv. No. 87–0024B.**

United States Bankruptcy Court,
D. Maryland.

June 27, 1989.

Lawrence D. Coppel, Gordon, Feinblatt, Rothman, Hoffberger and Hollander, Baltimore, Md., Allan A. Tuttle, John C. Martin, John F. Fithian, Patton, Boggs & Blow, Washington, D.C., for plaintiff Gucci America, Inc., Guccio Gucci S.p.A., and Gucci Parfums Intern., Ltd., Inc.

F. Thomas Rafferty, Schwarz, Greenblatt & Rafferty, Baltimore, Md., for defendant Michael Fox Auctioneers, Inc.

George W. Liebmann, Baltimore, Md., Trustee.

## MEMORANDUM OPINION GRANTING MOTION IN LIMINE TO EXCLUDE EVIDENCE OF STATE OF MIND OF CIVIL CONTEMNOR

JAMES F. SCHNEIDER, Bankruptcy Judge.

The question raised in this case is whether a defendant held in civil contempt by a bankruptcy court for violation of a court order may introduce evidence of its good faith in mitigation of damages and counsel fees sought by a plaintiff. The Court holds that such evidence is irrelevant in cases of civil contempt and therefore ought to be excluded.

### FINDINGS OF FACT

1. On July 25, 1986, Galleria Enterprises of Maryland, Ltd., ["Galleria"] filed a voluntary Chapter 7 bankruptcy petition in this Court. The debtor was engaged in the business of retail sales of Gucci brand merchandise in Baltimore and Ocean City, Maryland, pursuant to a franchising agreement with the plaintiff Gucci America dated June, 1984. The plaintiff terminated the agreement on April 24, 1986, effective May 9, 1986, because the debtor was unable to pay for Gucci merchandise. Contemporaneously, the Maryland Deposit Insurance Fund Corporation ["MDIF"] as receiver of Old Court Savings & Loan Association ["Old Court"], obtained a judgment against Galleria in the amount of $400,000 based upon loans made to Galleria by Old Court and asserted an additional claim against Galleria in the amount of $1.8 million. The schedules filed in the instant bankruptcy case indicate that the debtor owes debts totalling $2.2 million to MDIF and to the plaintiffs Guccio Gucci, an Italian corporation, Gucci Parfums, a Florida corporation and Gucci America, a New York corporation, debts totalling $371,000 for merchandise and licensing fees.

2. In October, 1986, the Chapter 7 bankruptcy trustee applied to this Court for approval of a liquidation sale of the debtor's assets, which principally consisted of inventory bearing the "Gucci" trademark. Gucci America filed suit in the U.S. district court and in the bankruptcy court (Adversary proceeding No. 86–0290–B) to enjoin the sale based upon the irreparable harm to the Gucci reputation which the plaintiff claimed would occur if the Gucci name were associated with a liquidation or "going out of business" sale. During the pendency of proceedings in the district court, the trustee and Gucci America reached a settlement of the controversy, whereby the trustee agreed not to mention the Gucci name in connection with any advertisements promoting the sale and not to sell out of the debtor's former premises any non-Gucci items, in consideration for which Gucci America dismissed its suits for injunctive relief, guaranteed an offer of at least $550,000 for the Gucci merchandise and waived all its claims against the debtor. On October 16, 1986, a stipulation of settlement containing these terms was approved by this Court. One of the parties to the stipulation was Michael Fox Auctioneers, Inc. ["Fox'], the defendant in these proceedings. By its participation in the stipulation, Fox agreed to be bound by the court order approving terms of the stipulation which provided that the Gucci name and logo could not be used by any purchas-

er or liquidator in advertising a sale of the Galleria inventory. Fox purchased the inventory from the trustee for the sum of $562,500 and scheduled a sale for November 10, 1986. On October 17, 1986, the Gucci entities dismissed their suits in the district court and the bankruptcy court and have not filed proofs of claim in the instant bankruptcy case.

3. On October 27, 1986, news stories about the sale appeared in the Baltimore *Sun* and *Evening Sun* in which the Gucci name not only appeared but was mentioned in quotes from Fox spokespersons in connection with the liquidation sale. In its own newsletter dated January, 1987, while the sale was allegedly in progress, Fox published an article entitled "Going Out of Business Sale for Gucci."

4. On February 9, 1987, the plaintiffs filed the instant suit against Fox requesting damages for breach of contract, injury to the Gucci trademark and civil contempt for the defendant's violation of the court order which approved the stipulation.

5. On March 12, 1987, Fox filed a motion to dismiss the complaint [P. 4] for failure to state a cause of action. After a hearing on July 14, 1987, this Court denied the motion. *Order* dated July 21, 1987 [P. 13].

6. On October 14, 1987, Fox filed an "Answer and Third Party Claim" [P. 16] in which it asserted a claim against the bankruptcy trustee "for all sums that may be adjudged against the defendant Michael Fox Auctioneers, Inc., in favor of the plaintiffs." *Id.* [P. 16]. The trustee filed an answer [P. 17] on October 23, 1987, in which he denied the allegations against him contained in the third party complaint and filed a crossclaim against Fox. On January 15, 1988, Fox filed an answer [P. 30] to the crossclaim. On the same date, the plaintiffs filed a motion for summary judgment [P. 31].

7. A hearing was held before this Court on February 2, 1988 upon the motion for summary judgment after which partial summary judgment was granted to the plaintiffs upon the findings that "Fox is liable to Gucci in contract for having violated the terms of the Stipulation of Settlement entered into on October 16, 1986" and that "Fox is liable to Gucci for contempt of court in that it violated the Court's order as incorporated in the Stipulation of Settlement." *Order* dated February 2, 1988 [P. 39].

8. On April 11, 1988, the plaintiffs filed a motion for summary judgment as to damages [P. 41]. After a hearing on May 25, 1988, the motion was denied. *Order* dated June 8, 1988 [P. 50]. Trial was scheduled to occur on February 13, 1989 upon the damages portion of the complaint.

9. However, on the date scheduled for trial, the plaintiffs filed the instant motion *in limine* [P. 54] to exclude from consideration by the Court any evidence sought to be introduced by the defendant regarding its state of mind or lack of willfulness as to the violation of the court order. The parties also filed stipulations of facts [PP. 56 and 57].

10. On February 23, 1989, Fox and the trustee filed a "Stipulation of Dismissal With Prejudice" [P. 63] by which they dismissed all actions against each other. Notice of the dismissal [P. 65] was filed on March 10, 1989. To date, no objections have been filed.

CONCLUSIONS OF LAW

1. The instant controversy is a core proceeding arising under title 11 which bankruptcy judges may hear and determine, pursuant to 28 U.S.C. §§ 1334(a), (b) and 157(a), (b)(1), (b)(2)(A), (N) and (O), and 11 U.S.C. § 105(a).[1] In addition, the parties

---

1. Section 1334. Bankruptcy cases and proceedings.
    (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
    (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

\* \* \* \* \* \*

Section 157. Procedure.

expressly assented to the jurisdiction of this Court by signing the Stipulation of Settlement dated October 16, 1986, which provided, in relevant part:

> Gucci agrees not to asert claims against the Trustee or any purchaser or liquidator in any forum, other than claims in the United States Bankruptcy Court alleging violation of this Stipulation. The Trustee and, by his signature to this Stipulation, any purchaser or liquidator, agree not to assert any claims against Gucci for damages, broadened sale rights or otherwise, in any forum, and agree not to assert claims for alleged violation of this Stipulation in any forum other than the United States Bankruptcy Court.

*Id.* ¶ 8 [Complaint Exhibit No. 1.]

2. This Court has found the defendant Michael Fox Auctioneers, Inc., to be liable to the plaintiff for having committed civil contempt by violating the terms of the Order approving the Stipulation of Settlement dated October 16, 1986. *Order Granting Plaintiffs' Motion for Partial Summary Judgment* dated February 3, 1988 [P. 39]. The remaining issue pending before the Court relates to the assessment of damages and attorneys' fees against the defendant/contemnor. The plaintiffs' motion seeks to exclude as irrelevant any evidence offered for the purpose of demonstrating the state of mind of the defendant in the

determination of civil contempt damages as well as the awarding of attorneys' fees.

3. In deciding whether to admit evidence of a contemnor's state of mind, courts must distinguish between criminal and civil contempt:

> The difference between civil and criminal contempt is subtle. An act found to be contemptuous may contain characteristics of both civil and criminal contempt. The most significant factors needed to determine the nature of the contempt order are the purposes and character of the sanctions imposed against the contemnor. A criminal contempt sanction is intended to vindicate the authority of the court and punish a past act of disobedience. A civil contempt sanction, by contrast, is intended to benefit the complainant and is either (1) remedial, or (2) coercive. Civil contempt sanctions which are remedial or compensatory are backward-looking[;] they seek to compensate the complainant through the payment of money for damages caused by past acts of disobedience. Civil contempt sanctions which are coercive look to the future; they are designed to aid the complainant by bringing a defiant party into compliance with the court order.

> Another factor used to distinguish between criminal and civil contempt is the intent of the contemnor. Criminal con-

---

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

\* \* \* \* \* \*

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjust-

ment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

\* \* \* \* \* \*

Section 105. Power of court.

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

\* \* \* \* \* \*

*Id.*

In its recent opinion in *In re Walters*, 868 F.2d 665 (4th Cir.1989), the Court of Appeals for the Fourth Circuit upheld the civil contempt powers of a bankruptcy court, citing section 105(a).

tempt is appropriate where the noncompliance is found, beyond a reasonable doubt, willful. Willfulness is defined as a deliberate or intended violation as distinguished from an accidental, inadvertent, or negligent violation of an order. Conversely, civil contempt, because of its remedical and coercive purposes, does not require willfulness or intent. Only two issues are relevant in consideration of a civil contempt motion: 1) whether the alleged contemnor knew of the order and 2) whether he complied with it. [Footnotes omitted.] [2]

4. In cases of contempt, there must be proof of willful disobedience beyond a reasonable doubt. *TWM Manufacturing Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1272 (6th Cir.1983); *United States v. Greyhound Corp.*, 508 F.2d 529, 531 (7th Cir. 1974). On the other hand, state of mind (i.e. willfulness) is not an element of civil contempt. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599, 604 (1949). In *McComb*, the Supreme Court held that intent is irrelevant in determining damages. Because civil contempt is a sanction to compensate for damages (among other things), "it matters not with what intent the defendant did the prohibited act." *Id.* This proposition from the *McComb* case was quoted by the Fourth Circuit Court of Appeals as recently as March 1, 1989 in the case of *In re Walters*, 868 F.2d at 668.

5. The mental state of the defendant is irrelevant in determining damages claimed to arise from civil contempt. "Because damages assessed in civil contempt cases are oftentimes compensatory (instead of coercive) the mental state of the violator should not determine the level of compensation due." *Cook v. Ochsner Foundation Hospital*, 559 F.2d 270, 272 (5th Cir.1977). In addition, a number of courts have held that once a complainant proves damages stemming from the contumacious behavior, the court has no discretion to withhold the appropriate remedial order. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2nd Cir.1979); *Parker v. United States*, 153 F.2d 66, 70 (1st Cir.1946); *Matter of Grand Jury Subpoena of June 12, 1986*, 690 F.Supp. 1451, 1453 (D.Md.1988). Where damages are proven, the complainant is entitled as of right to an order in civil contempt imposing a compensatory fine. *Parker v. United States*, 153 F.2d at 70.

6. The next issue is whether evidence of the defendant's state of mind should be excluded in determining the amount of the plaintiffs' attorney's fees which resulted from the commission of civil contempt. Although the Fourth Circuit Court of Appeals has not addressed this issue, the Fifth, Sixth, Seventh and Ninth Circuits have permitted fee awards in civil contempt proceedings even where the contempt was not willful. *Perry v. O'Donnell*, 759 F.2d 702 (9th Cir.1985); *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d at 1273; *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779 (7th Cir.1981); *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270 (5th Cir. 1977). The Third Circuit has expressly held that this is an open question. *See International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers Ass'n*, 660 F.2d 76, 84, n. 13 (3d Cir.1981). Only the Second Circuit has required a showing of willful noncompliance. *Vuitton et Fils v. Carousel Handbags*, 592 F.2d at 130.

7. The defendant has cited cases from this district and circuit which hold that a court may use its discretion in determining the amount of attorneys' fees to award based on a finding of civil contempt. *Folk v. Wallace Business Forms, Inc.*, 394 F.2d 240, 244 (4th Cir.1968); *Windsor Power House Coal Co. v. District 6 U.M.W.*, 530 F.2d 312, 317 (4th Cir.), *cert. denied*, 429 U.S. 876, 97 S.Ct. 199, 50 L.Ed.2d 159 (1976); *Matter of Grand Jury Subpoena of June 12, 1986*, 690 F.Supp. at 1453. While they provide that a judge has discretion in awarding fees, these cases do not require consideration of the defendant's state of mind.

8. Additionally, the defendant cites *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612,

**2.** Ron Weiss *Contempt Power of the Bankruptcy Court*, 6 Bankr.Dev.J. 205, 210–211 (1989).

44 L.Ed.2d 141 (1975). At first blush, *Alyeska* seems to imply, in *dicta*, that willfulness *is* a factor in determining the amount of attorneys' fees. *Id.* at 258, 95 S.Ct. at 1622, 44 L.Ed.2d at 154. However, the decision which *Alyeska* quotes for this proposition, *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426–28, 43 S.Ct. 458, 465–66, 67 L.Ed. 719, 730–31 (1923), clearly indicates that behind this statement is the rationale for criminal, not civil contempt. In *Toledo Scale* the court discussed the "unusual circumstances of disrespect" which would justify "punishment for contempt." [Emphasis added]. *Id.* at 427, 433 S.Ct. at 466, 67 L.Ed. at 731.[3]

In *Cook v. Ochsner Foundation Hospital*, 559 F.2d at 271–72, the Fifth Circuit Court of Appeals reviewed the *Alyeska* decision and held that it did not apply to situations where a court is enforcing its own order. In discussing the issue of attorneys' fees, the *Cook* court stated, "It matters not whether the disobedience is willful, the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party." *Id.* at 272.

9. Attorneys' fees are often awarded in civil contempt cases in which evidence of willfulness is deemed irrelevant on the issue of damages. *See N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1024 (5th Cir. 1984); *McComb v. Norris*, 177 F.2d 357, 359–60 (4th Cir.1949).

10. This Court holds that a civil contemnor's state of mind is properly excluded from consideration in determining awards of civil damages and attorneys' fees flowing from the commission of contempt. Because mental state is irrelevant regarding the issue of damages for civil contempt, it would be illogical to permit evidence of mental state on the issue of attorneys' fees. The purposes in awarding damages and attorneys' fees are identical, namely the compensation of the plaintiffs for their damages caused by the defendant's noncompliance with a court order.

WHEREFORE the plaintiffs' motion will be GRANTED.

ORDER ACCORDINGLY.

---

**3.** Moreover, the quoted *dicta* must be understood in the context of the facts of that case. *Alyeska* involved a lower court award of attorneys' fees to a plaintiff for performing the function of a private attorney general in enforcing Congressional statutes which did not themselves provide for an award of attorneys' fees. The Supreme Court reversed the award, reasoning that such awards should be left to statutes where Congress provided for such fees. 421 U.S. at 262–64, 95 S.Ct. at 1624–25, 44 L.Ed. at 156–57. Thus, the *Alyeska* decision is applicable to cases where fee-shifting is employed to augment acts of Congress which do not provide for such awards.