**UNITED STATES of America,
Plaintiff,**

v.

**Frankie SANDERS, Defendant.**

**Case No. 12–CV–96–NJR–SCW**

United States District Court,
S.D. Illinois.

Signed February 27, 2015

Laura J. Jones, Assistant U.S. Attorney, Fairview Heights, IL, for Plaintiff.

Christopher P. Threlkeld, J. William Lucco, Lucco, Brown, Threlkeld & Dawson LLP, Edwardsville, IL, for Defendant.

### MEMORANDUM AND ORDER

ROSENSTENGEL, District Judge:

According to the United States, Frankie Sanders did not file tax returns for twelve years. As a result, in August 2011, he was served with a summons from the Internal Revenue Service requiring him to provide information relating to his tax liabilities for the years 1998 through 2010 (see Doc. 2). Sanders refused to do so. He remained steadfastly obstinate over the course of the next two years, even after he was ordered by this Court to comply with the summons, fined well over $100,000, held in civil contempt of court, and thrown in jail.[1] Sanders's refusal to comply was based on his belief that the IRS did not have the authority to assess and collect taxes from him for a variety of reasons. It was only after the Court appointed the Federal Public Defender, Phil Kavanaugh, to represent Sanders that he saw the light and gave the Government the information it wanted.

The Court understands that there is nothing more the Government is seeking from Sanders and that he has fully purged the contempt (see Doc. 28). Before this matter can be dismissed, however, there are several loose ends that must be tied up: reimbursement for Mr. Kavanaugh's representation (Doc. 97), the Government's motion to order Sanders to pay the costs of his incarceration (Doc. 83), and Sanders's motion to reduce the Court-ordered fine (Doc. 99).

### A. Phil Kavanaugh's Fees and Costs

When this litigation began, Sanders was represented by an attorney, Jerold Barringer. But in December 2012, Mr. Barringer was suspended indefinitely from practicing in the Southern District of Illinois based on discipline imposed by the Tenth Circuit for making frivolous arguments in tax-related cases (Doc. 11). Following Barringer's suspension, Sanders represented himself *pro se*. After Sanders was held in contempt, the undersigned urged him to retain counsel on a number of occasions, but he did not do so. Out of an abundance of caution, the Court appointed the Federal Public Defender, Phil Kavanaugh, to represent Sanders (Doc. 64). Sanders was told that if the Court determined he had the financial ability to hire an attorney, he would have to reimburse Mr. Kavanaugh for his fees and costs (Doc. 64). Mr. Kavanaugh was terminated as counsel of record after Sanders retained a private attorney (Docs. 86, 87, 92, 95). At the Court's request, Mr. Kavanaugh submitted a statement itemizing his fees and costs (Doc. 96, 97). He indicated that he spent twenty-two hours on the case at an hourly rate of $78.80, and he traveled 188 miles at a rate of twenty-three and a half cents per mile (Doc. 97). Altogether, his fees and costs total $1,777.78.[2]

---

1. The case was originally assigned to District Judge William D. Stiehl, who has since retired. Judge Stiehl entered the original order imposing the sanctions (see Docs. 33, 36). After Judge Stiehl retired, the case was assigned to Judge Michael J. Reagan; it was reassigned to the undersigned District Judge on May 19, 2014 (see Doc. 49).

2. (22 hours × $78.80 per hour) + (188 miles × 0.235 per mile) = $1,777.78.

Sanders does not dispute that he was, at all times, financially able to employ counsel. He also does not dispute that his current assets are adequate to pay for the fees and costs incurred by Mr. Kavanaugh. And Sanders has no objection to the itemization of Mr. Kavanaugh's time, hourly rate, or mileage. In fact, Sanders agrees that he should reimburse Mr. Kavanaugh for the full amount requested (Doc. 99).

Accordingly, under 18 U.S.C. § 3006(A)(f), the Court finds that Sanders has the funds available to pay Mr. Kavanaugh for his representation, and Sanders is ORDERED to pay $1777.78 to the Office of the Federal Public Defender for the Southern District of Illinois within seven days of the entry of this Order.

## B. Sanders's Motion to Reduce Fine Sanctions

The Court repeatedly warned Sanders that if he failed to comply with its orders, he would face a per diem fine of $100 for the first seven days of noncompliance and $500 for every day thereafter (*see, e.g.,* Docs. 33, 36). As we now know, Sanders did not listen. His fine began accruing on November 8, 2013 (*see* Docs. 36, 39). It continued accruing until September 8, 2014, when it was discontinued by the Court (Doc. 66). By that time, Sanders had amassed a total fine of $149,200.[3] As ordered by the Court, he made an initial payment of $30,000 toward his fine on September 10, 2014. He was ordered to pay the balance of $119,200 by December 19, 2014 (Doc. 96). Before paying the balance, however, Sanders filed a motion seeking to have it reduced to $5,000 (Doc. 99). The Government opposes any reduction of the fine, and in fact, as discussed

below, wants to continue adding to Sanders's tab (Doc. 100; Doc. 83).

▆▆▆▆ Sanders first argues that the balance of his fine should be reduced because the Court did not make a clear statement of the hoped-for effectiveness of the fine, and it was ultimately not effective in compelling his eventual compliance, which he attributes to the appointment of Phil Kavanaugh (Doc. 99). In other words, because the fine did not put enough pressure on him to comply, he should not have to pay the fine. That is nonsense. Those who defy the Court must be prepared to pay the consequences, and their continued insubordination will not be rewarded with a lesser consequence. And while the Court did not explicitly discuss the probable effectiveness of the fine, it implicitly considered this and imposed a fine that it felt was meaningful enough to spur Sanders to comply without being so onerous that it resembled punishment.

▆▆▆ Sanders next argues that the balance of his fine should be reduced because his defiant behavior was legitimized by his previous attorney. He states "[w]hen an attorney clothed in the authority granted by the Illinois Supreme Court to practice law advances a philosophy that the IRS does not legally exist, people who are inclined to those types of theories are given all the justification they need to ignore court orders that compel production to the IRS." That may be true, however, it seems to the Court that Sanders should have been dissuaded from following in the footsteps of his attorney after he was suspended from practicing in a number of courts across the country for arguing that the IRS cannot assess or collect taxes. If adhering to this fringe philosophy cost his

---

**3.** (7 days: Nov. 8 through 14, 2013) × ($100 per day) + (297 days: Nov. 15, 2013 through Sept. 7, 2014) × ($500 per day) = $149,200.

attorney his ability to make a living, then Sanders should have known that picking up where his attorney left off would also cost him dearly.

■ While Sanders's arguments provide little basis for reducing the fines imposed, the Court nevertheless feels that a reduction is warranted. It is true that Sanders made no attempt to purge himself of contempt, even though he faced a six-figure fine and had been in jail for over twenty days, until Phil Kavanaugh was appointed. But once Sanders had competent legal counsel, his compliance was almost immediate, and he has remained cooperative ever since. Taking all of the circumstances into account, and in the exercise of its discretion, the Court deems it appropriate to leave the fine in place but reduce the amount of the total fine from $149,200 to $40,000. Sanders is ordered to pay the balance of $10,000 to the Court within seven days of the entry of this order.

## C. The Government's Motion to Order Sanders to Pay Costs of Incarceration

When the Government filed its motion for contempt, it requested that the Court find Sanders in civil contempt and incarcerate him until he complied with the IRS summons and paid the fine previously imposed by the Court (Docs. 44, 45). The Government did not request any compensatory sanctions or reimbursement for its fees and costs (see Docs. 44, 45). After Sanders purged the contempt, the Government filed a motion seeking to recover the costs that it incurred in confining Sanders in order to coerce his compliance (Doc. 83). The Government submitted an affidavit from Don Slazinik, the United States Marshal in the Southern District of Illinois, indicating that Sanders was incarcerated for twenty-eight days at the Marion County Jail at a cost of $45 per day ($1,260 in total) (Doc. 83–1).

■ Sanders filed a response to the Government's motion (Doc. 98). He argues that ordering him to pay the costs of his confinement would be a criminal contempt sanction, not a civil contempt sanction, because he no longer has the ability to purge himself of the contempt. That is incorrect. It is well-established that, independent of a coercive contempt sanction, a court may impose sanctions to compensate the complainant for actual losses incurred as a result of the contemnor's disobedience, and may also require the contemnor to pay the complainant's attorney fees and costs incurred in prosecuting the contempt petition. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir.1999) ("[S]anctions for civil contempt are designed to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy."); *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir.1981) ("Upon a finding of civil contempt, a court may, at its discretion, order reimbursement of the complainant['s] fees and expenses incurred in bringing the violation to the court's attention. Moreover, an award of expenses and fees in civil contempt proceedings is proper and is independent of any award of compensatory damages.")

Here, the Court found Sanders in civil contempt and initially imposed a coercive sanction: imprisonment. Now the Government is asking the Court to modify the contempt order and impose additional compensatory sanctions to reimburse the Government for the losses it sustained as a result of Sanders's contempt. His disobedience cost the federal taxpayers money because they foot the bill for his incarceration, and the Court is within its power to impose a fine to compensate the Treasury

for its actual damages. *See United States v. Dowell,* 257 F.3d 694, 700 (7th Cir.2001) (ordering attorney who failed to show for trial to reimburse the federal government for its costs, including jurors' service and mileage, the prosecutors' transportation to the courthouse, the defendant's lunch, and the cost of serving the show cause order on the attorney). Thus the sanction to Government is asking for is civil, not criminal.

 In this instance, however, the Court will not impose the requested sanction and order Sanders to pay the costs of his incarceration. As previously noted, the Government did not request any compensatory sanctions at the time it filed its motion for contempt. The Court is not going to continue to tack on additional sanctions for the original contempt that were never before mentioned, especially since Sanders has purged the contempt, and there is nothing further to be done in this matter. While it was a lengthy and exasperating battle, the Government was ultimately able to get the information that it sought, and Sanders will undoubtedly owe an enormous sum of money to the IRS.

The Government's motion to order Sanders to pay the costs of his incarceration (Doc. 83) is **DENIED.** Sanders's motion to reduce the court-ordered fine (Doc. 99) is **GRANTED.** The amount of the total fine is **REDUCED** from $149,200 to $40,000. Sanders is **ORDERED** to pay the balance of $10,000 to the Court within seven days of the entry of this Order (on or before **March 6, 2015**). Sanders is further **ORDERED** to pay $1777.78 for the fees and costs incurred by Phil Kavanaugh to the Office of the Federal Public Defender for the Southern District of Illinois within seven days of the entry of this Order (on or before **March 6, 2015**), and to

file notice with the Court that he has done, so.

Once the Court has been notified that Sanders has made both payments, this matter will be dismissed. On the other hand, if Sanders fails to make either payment on time, the payments will be reduced to judgment, and the Government will be entitled to use any method permitted by statute to collect the judgment.

**IT IS SO ORDERED.**