Annie Pearl MOTLEY, et al., Plaintiffs,

v.

Joseph P. YELDELL, et al., Defendants.

Civ. A. No. 74–13.

United States District Court, District of Columbia.

April 8, 1987.

Lynn E. Cunningham, Neighborhood Legal Services Program, Washington, D.C., for plaintiffs.

George C. Valentine, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., Chief Judge.

For the Court's consideration is a petition for attorneys' fees and costs with respect to work done in connection with the Court's July 24, 1985 contempt order in the above-captioned matter. For the reasons stated below, this petition shall be granted.

### I. *Background*

In 1974, Plaintiffs filed this action alleging that Defendants were violating their rights under the federal constitution and the Social Security Act and implementing regulations. Plaintiffs prevailed. On November 8, 1974, the Court entered a permanent injunction requiring defendants to comply with federal law governing the administration of the Aid to Families With Dependent Children (AFDC) program, 42 U.S.C. § 602(a)(1) and 45 C.F.R. § 206.-10(a)(3)(1). The Court retained jurisdiction and certified a class consisting of all applicants for AFDC assistance in the District of Columbia.

On February 8, 1978, the Court held Defendants in contempt of the 1974 Order as amended. The Court then issued another permanent injunction against Defendants

which established a monitoring system for Defendant's compliance.

Plaintiffs sought a second contempt order in 1982 as a result of Defendants' failure to comply with the 1974 and 1978 orders. The Court held Defendants in contempt on July 24, 1985. It is for the work associated with this second contempt proceeding for which Plaintiffs seek attorneys fees and costs.

## ANALYSIS

Plaintiffs believe they are entitled to attorneys fees and costs under three separate theories. The first is that Defendants acted in bad faith throughout this litigation, willfully failing to comply with this Court's orders. The second is that because Plaintiffs could have brought suit under 42 U.S.C. § 1983, they are now entitled to fees pursuant to 42 U.S.C. § 1988. Finally, Plaintiffs seek fees under Rule 11 as sanctions against Defendants' alleged false presentation of the record in their Opposition to the Plaintiffs' Motion for an Order Adjudging Defendants in Contempt.

 The Court shall grant Plaintiffs' Motion based on a fourth theory; that in a case involving civil contempt, there need be no finding of willful contempt for a Court to award Attorneys' fees and costs to the prevailing party. Although the Court of Appeals for the District of Columbia Circuit has not addressed this question, the Fifth, Sixth, Seventh and Ninth Circuits have all allowed fee awards in civil contempt proceedings in which the contempt was not found to be willful.[1] *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270 (5th Cir.1977); *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261 (6th Cir.1983); *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779 (7th Cir.1981); *Perry v. O'Donnell*, 759 F.2d 702 (9th Cir.1985).

An analysis of the issue of when it is appropriate for a court to award attorneys' fees and costs must begin with *Alyeska*

*Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In that case, the Court recognized that there are certain well-established exceptions to the general rule that in the absence of a statute or enforceable contract providing otherwise, each litigant pays his or her own attorneys' fees. One of these exceptions is that "a court may assess attorneys' fees for the 'willful disobedience of a court order ... as part of the fine to be levied on the defendant.'" *Id.* at 258, 95 S.Ct. at 1622 (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967)) (citing *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426–28, 43 S.Ct. 458, 465–66, 67 L.Ed. 719 (1923)). Another is that fees may be awarded to the prevailing party "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska*, 421 U.S. at 258–259, 95 S.Ct. at 1622 (citations omitted).

The Court finds persuasive the reasoning of the courts cited above which hold that while *Alyeska* specifically discusses willful disobedience of a court order, it does not prevent a trial court from granting a fee petition in a civil case where a party's contempt is not willful. *Perry v. O'Donnell*, 759 F.2d 702 (9th Cir.1985) notes that *Alyeska* was not a contempt case so there was no need in that action for the Court to discuss whether a finding of willfulness is a prerequisite to the award of attorneys' fees in a civil contempt proceeding. *Id.* at 705. Additionally, the Court in *Perry* observed that unlike criminal contempt, civil contempt may be established even though the failure to comply was unintentional. *Id.* Finally, the Court decided that "an inflexible rule requiring the denial of fees when civil contempt is not 'willful' would prevent the party proving the contempt from being fully compensated in many cases." *Id.* The Court concluded that it would analyze each contempt case individu-

---

1. The Third Circuit has expressly stated that this is an open question. *See, International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers Ass'n*, 660 F.2d 76, 84, n. 13 (3rd Cir.1981). Only the Second Circuit has required a finding of willful non-compliance, although it has not discussed the rationale for this requirement. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126 (2nd Cir.1979).

ally to decide whether an award of fees is an appropriate remedial measure. *Id.*

The Court in *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270 (5th Cir.1977), reached the same conclusion that willfulness is not a prerequisite to an award of fees in a civil contempt case. The Court, noting its "inherent authority ... to enforce its orders by whatever means," held in a civil contempt case that

> [i]t matters not whether the disobedience is willful, the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order.

> We, therefore, hold that *Alyeska* was not intended to take away the inherent authority of a court to award attorneys' fees in a civil contempt proceeding.

*Id.* at 272, 273. *See also Commodity Futures Trading Comm's v. Premex, Inc.*, 655 F.2d 779 (7th Cir.1981); *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261 (6th Cir. 1983).

Given the circumstances leading to this petition for fees, the Court shall apply the reasoning of the Circuits which have not required a finding of willful non-compliance in a civil contempt proceeding to award fees and costs to the Plaintiffs in this action against the District of Columbia.

## II. *The Lodestar*

Once it has been determined that Petitioner is entitled to some award of fees, the next step is to determine the lodestar—the number of hours reasonably expended, multiplied by a reasonable hourly rate. "The figure generated by that computation is the basic fee from which a trial court judge should work." *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980).

### A. *Amount of Time Reasonably Expended*

During the approximately two and one half year period for which fees are sought by the instant petition, 842.122 hours are claimed by three attorneys associated with the Neighborhood Legal Services Program. A summary of the hours claimed and the work performed follows:

Hours Expended

| Task Period | Robert I. Berlow, Esq. | Christopher R. Whittingham, Esq. | Lynn E. Cunningham, Esq. | Description of Work |
|---|---|---|---|---|
| June 1982– Dec. 1982 | 378.96 | 27 | | Research draft and submit Motion for contempt; discovery and preparation for contempt hearing, including 13 depositions; 3-day contempt hearing, preparation of 2 post-hearing memoranda and proposed findings. |
| Jan. 1983– Sept. 1984 | 190.05 | | | Post hearing discovery; research and preparation of memoranda regarding defendants' post-hearing compliance. |
| Oct. 1984– Dec. 1984 | 5.65 | 26.662 | .50 | Transfer of case; meetings with defendants' counsel re: possible settlement and preparation of Joint Re- |

| | | Hours Expended | | |
|---|---|---|---|---|
| Task Period | Robert I. Berlow, Esq. | Christopher R. Whittingham, Esq. | Lynn E. Cunningham, Esq. | Description of Work |
| | | | | port, re: future discovery; initial research on reopening of 1982 hearing. |
| Jan. 1985– July 1985 | | 103.488 | 2.00 | Factual and legal research for preparation of interrogatories and other discovery; research prepare and submit motion for judgment of contempt on the record; prepared and opposed discovery motions; consultations on case strategy; argued motions at May 3, 1985 contempt hearing. |
| Aug. 1985– Dec. 1985 | | 100.232 | 7.58 | Researched, prepared and submitted motion for attorneys' fees and supplemental memorandum; researched, prepared and argued objections to defendants proposed plan to purge thenselves of contempt. |
| TOTAL | 574.66 | 257.382 | 10.08 | |

Defendant argues that Plaintiffs' request for attorneys' fees is not supported with adequate documentation, citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and *Nat. Ass'n of Concerned Veterans v. Sec. of Defense*, 675 F.2d 1319 (D.C.Cir.1982) among other cases. Beyond this boilerplate allegation, however, Defendant does not go. A fee application need not present "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) (*en banc*). The fee application "must be sufficiently detailed to permit the District Court to make an independent determination whether the hours claimed are justified. The better practice is to prepare detailed summaries based on contemporaneous time records indicating the work performed by each attorney for whom fees are sought." *Nat. Ass'n of Concerned Veterans*, 675 F.2d at 1327. The instant fee request meets these standards. Plaintiffs have submitted affidavits which sufficiently detail the work they did and the date on which it was done. The Court is confident that given the information before it, including the affidavits and the pleadings to which they refer as well as a knowledge of the proceeding at issue, it can make the requisite determination of whether the hours claimed are reasonable.

The Court holds that all of the time claimed by each attorney was reasonably expended and does not include hours which

are non-productive, excessive, redundant or otherwise unnecessary with one exception. Petitioners claim that Mr. Whittingham spent 80.246 hours on work associated with the instant fee petition. While the Court does not imply that this amount of time was not actually spent, "[a]n applicant for attorneys' fees is only entitled to an award for time reasonably expended." *Id.* For the applications presented, 25 hours is reasonable. The additional 55.246 hours shall be subtracted from Mr. Whittingham's total.

### B. *Reasonable Hourly Rate*

"The reasonable hourly rate is that prevailing in the community for similar work. [A] reasonable hourly rate is the product of a multiplicity of factors [including] ... the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case." *Copeland v. Marshall,* 641 F.2d at 892 (citing *Evans v. Sheraton Park Hotel,* 503 F.2d 177, 187–88 (D.C.Cir. 1974)). Using these guidelines, the Court shall determine the reasonable hourly rate of each of the three attorneys involved in the contempt proceeding at issue.

1. *Christopher R. Whittingham, Esq.* —Mr. Whittingham served as sole counsel for Plaintiffs in this action since October 15, 1984. He was admitted to the Bar of the Court of Appeals for the District of Columbia in December, 1981; the United States District Court for the District of Columbia in January, 1982; the Supreme Court of Pennsylvania in August, 1984; and the United States Court of Appeals for the District of Columbia Circuit in January, 1985. Affidavit of Christopher R. Whittingham in Support of Motion for Attorneys' Fees and Costs (Whittingham Affidavit) at paragraph 1.

As a staff attorney in the Law Reform Unit of the Neighborhood Legal Services Program (NLSP) for the District of Columbia, he specialized in public benefits law and was responsible for all NLSP major welfare litigation in the federal courts. Whittingham Affidavit at paragraph 2.

On the basis of Mr. Whittingham's experience and qualifications and the affidavits of Earl W. Kintner and Daniel A. Rezneck and the exhibits attached thereto, the Court shall use $100 per hour as Mr. Whittingham's reasonable hourly rate in the lodestar calculation.

2. *Robert I. Berlow, Esq.*—From 1982 until 1984, Mr. Berlow was lead counsel in the instant litigation. He was admitted to the Bar of the Supreme Court of New Jersey and the United States District Court for the District of New Jersey in December, 1976. He was admitted to the Bar of the District of Columbia Court of Appeals and the United States District Court for the District of Columbia in June, 1977. Declaration of Robert I. Berlow in Support of Motion for Attorneys' Fees and Costs (Berlow Declaration) at paragraphs 3, 4.

As a staff attorney for the NLSP, Mr. Berlow represented clients in matters such as landlord-tenant, consumer affairs and welfare law, practicing in federal and local administrative agencies and trial and appellate courts. He was involved in at least four class actions during this period. Berlow Declaration at paragraph 6.

Based on Mr. Berlow's experience and qualifications and the affidavits of Earl W. Kintner and Daniel A. Rezneck and the exhibits attached thereto, the Court shall use $125 per hour as Mr. Berlow's reasonable hourly rate in the calculation of the lodestar in this matter.

3. *Lynn E. Cunningham, Esq.*—Mr. Cunningham was in charge of the Law Reform Unit of the NLSP during the period involved in this fee application. His job included supervising the work of Mr. Whittingham and Mr. Berlow. He reviewed each major decision in the litigation and reviewed all major filings. Affidavit of Lynn E. Cunningham at paragraphs 1, 2.

Before becoming a staff attorney at the NLSP, Mr. Cunningham worked for a private firm from September, 1972 to January, 1975. In April, 1975, he joined another private firm. On August 1, 1977, he joined the staff of the NLSP, and in March, 1978 became the staff attorney specializing in housing law in the NLSP Law Reform

Unit. He became managing attorney of the Law Reform Unit on January 1, 1980. Affidavit of Lynn E. Cunningham at paragraphs 4, 5.

On the basis of Mr. Cunningham's experience and skill and the affidavit of Daniel A. Rezneck and the exhibits attached thereto, the Court shall use $150 as Mr. Cunningham's reasonable hourly rate in the calculation of the lodestar in this matter.

The Court notes that in determining the reasonable hourly rates for each attorney listed above, it was not given any "specific contrary evidence tending to show that a lower rate would be appropriate." *Nat. Ass'n of Concerned Veterans*, 675 F.2d at 1326. In fact, there is no documentation attached to Defendant's Opposition to the fee petition. Additionally, Defendants are not entitled to the discovery they request in their Opposition to Plaintiff's Petition. *See, Id.* at 1329, 1338.

Given the number of hours spent by each attorney in pursuing the contempt citation which is at issue in this Petition and each attorney's reasonable hourly rate, the lodestar fee in this case is broken down as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Christopher B. Whittingham | 202.136 | $100 | $20,213.60 |
| Robert I. Berlow | 547.66 | $125 | $71,882.50 |
| Lynn E. Cunningham | 10.08 | $150 | $ 1,512.00 |
| | | | $93,558.10 |

### III. *Adjustments to Lodestar*

 Petitioners seek an upward adjustment of twenty percent to the lodestar established in this matter because of their success in this litigation, the delay involved in receiving compensation and the risk that no fee would be paid. "The burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation." *Copeland*, 641 F.2d at 892 (citing *Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 540 F.2d 102, 118 (3rd Cir.1976) (*en banc*)). It is rare that a court grants such an adjustment.

In the instant case, the Court believe that the hourly rates used to calculate the lodestar of $93,558.10 adequately take into account the factors presented by Plaintiffs.

Therefore, the lodestar figure shall be the amount of fees awarded to Plaintiffs.

### IV. *Costs*

Defendants do not contest the $2,905.78 that Plaintiffs claim for costs. The Court finds this figure reasonable, and will therefore award it to Plaintiffs.

An appropriate Order accompanies this Memorandum.

### ORDER

In accordance with the Memorandum entered this date in the above-captioned action, it is by the Court this 8th day of April, 1987,

ORDERED, that the District of Columbia shall pay to Petitioners the sum of Ninety-Six Thousand Four Hundred Sixty-Three Dollars and Eighty-Eight Cents ($96,463.88) in reasonable attorneys' fees and costs.