**OMEGA WORLD TRAVEL, INC., Plaintiff,**

v.

**OMEGA TRAVEL, INC., et al., Defendants.**

**Civ. A. No. 88–0166–R.**

United States District Court, E.D. Virginia, Richmond Division.

April 6, 1989.

Mark Pestronk, Pestronk & Associates, Fairfax, Va., for plaintiff.

Michele A. Haley, John F. Rick, Maloney, Yeatts, & Barr, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This matter is presently before the Court pursuant to an earlier order of the Court

directing plaintiff, Omega World Travel, Inc. ("World"), to show cause why it should not be held in contempt for violation of a consent decree entered in the summer of 1988. The Court proceeds under the long recognized, inherent jurisdiction of federal courts to protect and enforce their orders and judgments. *See Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867); *see also Central of Ga. Ry. Co. v. U.S.*, 410 F.Supp. 354, 357 (D.D.C.1976).

World brought this trademark and unfair competition action against Omega Travel, Inc. ("Travel") in March of 1988. On June 8, 1988, prior to the trial of the matter, scheduled for June 15, 1988, the parties joined in a consent decree which was then entered by the Court. The decree specified various limitations on the parties' use of the word "Omega" in marketing their respective travel services in the Richmond, Virginia area. Under the consent decree, World is

> [e]njoined and restrained from using, in connection with sale or provision of travel services, [in the city of Richmond and surrounding areas], any service marks, trade names, trademarks, or other name containing the word "Omega" and identifying its services, other than all of the words in its full corporate name as of the date of this Order, except that it may omit the word "Inc." from such identification. The words "Omega" and "World" shall be in the same type face and size.

Consent Decree at 3.

On February 15, 1989, Travel brought a motion for civil contempt sanctions against World on the ground that World's 1989 advertisement in the Bell System's "Yellow Pages" phone directory for "Greater Richmond" appeared to violate the consent decree. Thereafter, on February 17, 1989, the Court entered an order "requesting that Omega World Travel, Inc. show cause why it should not be held in civil contempt for failing and refusing to obey" the consent decree. On March 14, 1989, the parties appeared before the Court at an evidentiary hearing on the issue of World's compliance with the decree.

*Discussion*

■ In order to obtain civil contempt relief for violation of a consent decree, a movant must satisfy four elements, *viz.*, (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) a showing that the decree was in the movant's "favor"; (3) a showing that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation; and (4) a showing that movant suffered harm as a result. *See McGoff v. Rapone*, 78 F.R.D. 8, 30 (E.D.Pa.1978) (citing *Parker v. U.S.*, 153 F.2d 66, 70 (1st Cir.1946)). World does not deny that the first two of these elements are satisfied and disputes only the third and fourth elements.

*Contempt*

Uncontroverted evidence was adduced at the hearing that in World's 1989 Yellow Pages ad, the word "Omega" appears in a typeface that is significantly bolder than the typeface of the words "World" and "Travel." In addition, the size of the word "Omega" is at least double that of "World" and "Travel." The evidence also established that the ad was placed and finalized well after the Court's entry of the consent decree. There is no question that the ad plainly violates the terms of the decree. Further, given the time elapsed between entry of the decree and placement of the ad and given the affirmative steps necessary to create and place a Yellow Pages ad, the Court concludes that World had at least constructive knowledge of the violation.

Nevertheless, at the hearing and in its brief, World asserted that it could raise a "complete defense" of substantial compliance pursuant to, *e.g.*, *Consolidated Coal Co. v. Local 1702, United Mineworkers of America*, 683 F.2d 827, 832 (4th Cir.1982). World argued that its violation was "technical" and resulted from inadvertence. World claimed that it had taken "reasonable steps" to comply with the decree and asserted that the violation was clearly not intentional or willful. Citing *Consolidated Coal Co.*, 683 F.2d at 832, World argued

that "[a] good faith attempt to comply with a court's order is a defense to [a] civil contempt order, even if those attempts were ineffective."

■ The Court does not agree that a good faith attempt to comply is a complete defense. In a case subsequent to *Consolidated Coal Co.*, the United States Court of Appeals for the Fourth Circuit stated that "... good faith, alone, does not immunize a party from a civil contempt sanction for noncompliance with a court order." *Mclean v. Cent. States, S & S Areas. Pen. Fund.*, 762 F.2d 1204, 1210 (4th Cir.1985) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)).

■ In any event, based on the testimony elicited at the hearing, the Court finds no evidence that World made a good faith attempt to comply with the order. Travel's witnesses indicated that various World marketing devices other than the offending ad were also in violation of the decree as recently as the week before the hearing. In the Court's view, this additional evidence of non-compliance clearly buttresses its perception that World made, if any, only negligible efforts to comply with the consent decree. World certainly did not take reasonable steps to do so.

The other offending items included a sign on the front of World's Richmond office as well as ticket jackets and travel itineraries regularly given to World's clients. The violations by these items also arise from different typeface and size of the word "Omega" relative to the accompanying words. The fact that some of these violations were remedied only in the week before the hearing, that is, nearly a month after the date of entry of the Court's show cause order, persuades the Court that World continued to make almost no effort, much less a good faith effort to comply with the decree, even after entry of the show cause order. Similarly, the Court sees no basis for ruling that World is in "substantial compliance" with the terms of the consent decree in issue here. *Cf. U.S. v. Darwin Const. Co.*, 679 F.Supp. 531, 536–37 (D.Md.1988). For these reasons,

aggravated by the relative permanency of the Yellow Pages ad which will remain in general distribution until late 1989, the Court finds that World is in civil contempt of the consent decree of June 8, 1988.

### Damages and Fine

The issue remains whether Travel suffered harm as a result of World's contempt and, if so, what would be a proper remedy. As the district court in *McGoff, supra,* aptly observed, a civil contempt remedy "has two possible foci: to coerce the non-complying party into complying and to compensate his adversary for losses suffered as a result of noncompliance." 78 F.R.D. at 29. With respect to coercing future compliance, the only continuing violation is the Yellow Pages ad. However, since the Court obviously has no control over the dissemination and use of the public phone directories, ordering further compliance as a remedy for the Yellow Pages violation is not an option. Rather, the Court must consider the other "foci," i.e. some form of compensation to Travel. *See Folk v. Wallace Bus. Forms, Inc.*, 394 F.2d 240, 244 (4th Cir.1968) ("no one seriously questions the right of the court to award civil contempt damages which have long been recognized" citing *inter alia, Parker v. U.S., supra.*)

At the hearing, Travel's witnesses established to the Court's satisfaction that current and potential clients of Travel have been confused by the World Yellow Pages ad. Some callers evidently have done business with World whereas their original intent had been to deal with Travel. Not surprisingly, however, Travel was unable to offer any quantification of the harm it suffered from the confusion either in lost business or in loss of good will.

■ Despite this failure of proof by Travel, the Court is not completely without a basis for awarding monetary relief. The action being one for contempt of a court's decree, the system as well as the movant was harmed by World's neglect of its obligations under the consent decree. An appropriate penalty, therefore, is the imposi-

tion of a monetary fine against World. *See* 18 U.S.C. § 401 (1982):

A court of the United States shall have power to punish by fine ... such contempt of its authority, and none other, as— ... (3) disobedience or resistance to its lawful writ, process, order, rule, decree or command.

The Court will therefore impose against the contemnor, World, a fine of $5,000.00 which, under the equities of this case, will be paid over to Travel. *Accord Gordon v. S.S. Vedalin,* 346 F.Supp. 1178, 1183 (D.Md.1972). In the Court's view, the pay-over to Travel of the proceeds of a fine against World will work, in part, toward accomplishing the dual objectives of compensating Travel for its losses and denying World the benefits of its wrongdoing.

However, more must be done to accomplish these objectives. The confusion from the offending Yellow Pages ad is causing a continuing reduction, albeit unquantified, in Travel's ability to communicate with existing and potential clients. Simultaneously, to an again unascertained extent, Omega is communicating, with the potential of gaining new clients, with callers who initially wish to deal with Travel.

As a remedy, World will be directed to install a recorded message at the phone number given in World's Yellow Pages ad. The gist of the message will be to inform callers that two similarly named, yet completely discrete, travel service firms exist in the Richmond area and that the caller should ascertain separately the identity of the firm he or she seeks. World must obtain another phone number and offer that number, along with the number for Travel's offices, on the recorded message. The Court has provided a script for this recorded message in the appendix to this memorandum.

### Attorneys' Fees

Finally, the Court will consider Travel's request for recovery of the attorneys' fees it incurred in pursuing this contempt action. In *Folk, supra,* the Fourth Circuit commented that no one would seriously question the correctness of including attorneys' fees as an element of civil contempt damages. 394 F.2d at 244 (citing *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719 (1923) and *Fleischmann Distilling Corp. v. Maier Brewing,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967)). However, *Folk* preceded the now well known opinion in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), in which the Supreme Court strongly reaffirmed the "American rule," which disfavors awards of attorneys' fees except in a limited number of exceptional circumstances. One exception, specifically recognized in *Alyeska,* is that

... a court may assess attorneys' fees for the 'willful disobedience of a court order ... as part of the fine to be levied on the defendant ...'

*Id.* at 258, 95 S.Ct. at 1622 (quoting *Fleischmann Distilling Corp., supra,* 386 U.S. at 718, 87 S.Ct. at 1407).

Subsequent to *Alyeska,* and as a result of the Court's specification of "willful disobedience," several Circuits have questioned, with mixed conclusions, the propriety of awarding attorneys' fees when a court holds a party in civil contempt but does not find that the contemnor willfully disobeyed the court's order or decree. *Compare Cook v. Ochsner Found. Hosp.,* 559 F.2d 270 (5th Cir.1977) (no finding of willful contempt necessary for an award of fees); *TWM Mfg. Co. v. Dura Corp.,* 722 F.2d 1261 (6th Cir.1983) (same); *Commodity Futures Trading Comm'n v. Premex, Inc.,* 655 F.2d 779 (7th Cir.1981) (same); *Perry v. O'Donnell,* 759 F.2d 702 (9th Cir. 1985) (same); *with Vuitton Fils S.A. v. Carousel Handbags,* 592 F.2d 126 (2d Cir. 1979) (requiring a finding of willful noncompliance for an award of fees); *see also Intern. Broth. of Teamsters v. Western Pa., etc.,* 660 F.2d 76, 84 n. 13 (3d Cir.1981) (calling the issue "an interesting question" but not reaching it due to contemnor's willful disobedience). The Fourth Circuit, by contrast, has not explicitly rendered an opinion on the necessity of a finding of willful disobedience. In *Wright v. Jackson,* however, the Fourth Circuit con-

sidered *Alyeska*'s use of the phrase "willful disobedience" and determined that a contemnor's refusal to comply with a court order must rise at least to the level of obstinance or recalcitrance before the willful disobedience exception is invoked. 522 F.2d 955, 957–58 (1975).

In this case, the Court does not find World's conduct to have been either obstinate or recalcitrant. Rather, World's noncompliance resulted from neglect and carelessness. The Court, thus, must determine, apparently as a matter of first impression in this circuit, whether a separate exception to the American rule exists based on civil contempt that is less egregious than obstinate or recalcitrant disobedience. In the Court's view, the *Wright* court's silence on the existence of such an exception offers no support for either possible conclusion.

Several courts have found that *Alyeska* does not proscribe awards of fees for less than willful disobedience. In *Motley v. Yeldell*, 664 F.Supp. 557 (D.D.C.1987), the District Court for the District of Columbia surveyed the various Circuit Court opinions on the issue and concluded that while *Alyeska* specifically mentioned willful disobedience, it "does not prevent a trial court from granting a fee petition in a civil case where a party's contempt is not willful." *Id.* at 558. According to the court in *Motley*, citing the Ninth Circuit in *Perry v. O'Donnell, supra, Alyeska* was not a contempt case "so there was no need in that action for the Court to discuss whether a finding of willfullness is a pre-requisite to the award of attorneys' fees in a civil contempt proceeding." *Motley*, 664 F.Supp. at 558. *Motley* found further support for its conclusion in the observations that "unlike criminal contempt, civil contempt may be established even though the failure to comply was unintentional," and "that an inflexible rule requiring the denial of fees when civil contempt is not 'willful' would prevent the party proving the contempt from being fully compensated in many cases." *Id.* (citing *Perry, supra*). Finally, quoting the Fifth Circuit in *Cook v. Ochsner Found.*

*Hosp., supra, Motley* reasoned that a court has " 'inherent authority ... to enforce its orders' " literally " 'by whatever means' " it chooses. 664 F.Supp. at 559. The *Cook* and *Motley* courts concluded that *Alyeska* "was not intended to take away the inherent authority of· a court to award attorneys' fees in a civil contempt proceeding." *Id.*

██ Regretfully, and with all due deference, this Court cannot agree. *Alyeska*, as noted previously, was a clear reaffirmation of the American rule. The Court noted that the exceptions it recognized reflected "unquestionabl[e] assertions of inherent power in the courts to allow attorneys' fees in particular situations." *Alyeska*, 421 U.S. at 259, 95 S.Ct. at 1622. Given *Alyeska*'s firm opposition to attorneys' fee awards generally and its specificity in mentioning particular exceptions that the Supreme Court considered well established, this Court believes that the specified exceptions must be read strictly. In the Court's view, this issue is a proper one for importing the statutory construction maxim of *expressio unius est exclusio alterius* into the interpretation of a legal opinion.

This Court, additionally, finds no compelling reasons for creating an addendum to the inherent authority recognized in *Alyeska*. The Court is unpersuaded by the reasoning of the *Motley* court. The rationales offered in that opinion are the standard arguments advanced against the American rule generally. These rationales were found to be overcome by countervailing arguments in *Alyeska* and by all other courts that have found wisdom in the American rule.[1] Were the Court to accept these rationales as basis for yet another exception and permit a fee award on the instant facts, the Court would do violence to the rule in *Alyeska*, a rule particularly vulnerable to evisceration by easy exception. Accordingly, the Court cannot award attorneys' fees to Travel for its prosecution of this contempt action.

An appropriate Order shall issue.

---

1. The Court, in this instance, takes the American rule as a given and offers no comment on whether it finds more wisdom in the American or English rules.

## APPENDIX

"You have reached the former phone number of Omega World Travel, Inc. To be certain that you contact the particular travel services firm you seek, please be advised that two travel service firms operating in the Richmond area have commercial names beginning with the word 'Omega.' One is Omega Travel, Inc.; the other is Omega World Travel, Inc. You should ascertain from other sources the identity of the particular firm you wish to speak with.

Omega Travel, Inc. may be contacted at (   )_____. Omega World Travel, Inc. may be contacted at (   )_____."

## ORDER

For the reasons given in the accompanying Memorandum this day entered and deeming it proper so to do, the Court finds that plaintiff, Omega World Travel, Inc., is in civil contempt of the consent decree entered by the Court in this matter on June 8, 1988. To remedy this instance of contempt, it is hereby ADJUDGED and ORDERED that plaintiff be and the same is hereby directed to:

(1) install a recorded message at the phone number given in plaintiff's advertisement in the "Greater Richmond" Yellow Pages phone directory for 1989, as more fully explained in the Memorandum and its appendix;

(2) pay over a monetary fine of $5,000.00 to defendant, Omega Travel, Inc.

It is further ADJUDGED and ORDERED that defendant's request for an award of attorneys' fees for prosecuting this civil contempt action be and the same is hereby DENIED.

Plaintiff shall recover its taxable costs.

Let the Clerk send a copy of this Order and the Memorandum to all counsel of record.